UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| ECCLESIASTICAL DENZEL WASHINGTON )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>LARRY DENNEY, et al. )<br>)<br>    Defendants. ) | Civil No. 2:14-cv-06118-NKL |

**ORDER**

Following entry of a jury verdict against them, [Doc. 171], Defendants Denney, Pash, Prudden, and Richey renew their request for judgment as a matter of law, and in the alternative, they request a new trial. [Doc. 180]. For the following reasons, the motion is denied.

**I.    Background**

Plaintiff Ecclesiastical Denzel Washington brought this case for violation of his Eighth Amendment rights under 42 U.S.C. § 1983 against various officials at Crossroads Correctional Center where he has been confined since 2010. Washington alleged that these officials were deliberately indifferent to his serious medical needs by failing to take reasonable steps to abate the risk of harm that secondhand smoke poses to him. Washington alleged that his long history of asthma and other respiratory conditions exacerbates these risks.

At trial, Washington presented evidence about his medical conditions, as well as evidence that he is regularly exposed to tobacco smoke due to smoking inside Crossroads despite an official policy prohibiting smoking inside the prison; Crossroads' repeated refusal to permit Washington to use a medically prescribed mask; and Crossroads' refusal to assign him a

nonsmoking cellmate. After a three-day jury trial, the jury found in Washington's favor and against four of the five defendants: Larry Denney, Ronda Pash, Cyndi Prudden, and Cheryl Richey.[1] The jury awarded $40,000 in compensatory damages and imposed a total of $71,000 in punitive damages as follows: $20,000 against Denney; $25,000 against Pash; $25,000 against Prudden; and $1,000 against Richey. [Doc. 171].

II.  Discussion

   A.  Judgment as a Matter of Law

Defendants argue they are entitled to judgment as a matter of law because there was insufficient evidence to support the jury's verdict.

"Judgment as a matter of law is appropriate if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Equal Employment Opportunity Com'n v. Kohler Co.*, 335 F.3d 766, 772 (8th Cir. 2003) (citing Fed. R. Civ. P. 50(a)(1)) (internal quotation marks omitted). "[T]he law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused." *Hunt v. Neb. Public Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002) (internal citations omitted). "Where conflicting inferences reasonably can be drawn from the evidence, it is the role of the jury, not the court, to determine which inference shall be drawn." *Id.* The Eighth Circuit describes the district court's task on such a motion as requiring the court to:

> (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, (4) give the prevailing party the benefit of all favorable inferences that may

---

[1] The jury found in favor of Defendant Amy Parkhurst. [Doc. 171, p. 1].

> be reasonably drawn from the facts provided. That done, the court must then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence.

*E.E.O.C.*, 335 F.3d at 772 (internal quotation marks omitted). "[I]t is improper to overturn a jury verdict unless, after giving the nonmoving party the benefit of all reasonable inferences and resolving all conflicts in the evidence in the nonmoving party's favor, there still exists *a complete absence of probative facts* to support the conclusion reached so that no reasonable juror could have found for the moving party." *Hunt*, 282 F.2d at 1029.

### 1. The 1983 Verdict

Washington's Eighth Amendment claim required him to prove that (1) he suffered from an objectively serious medical need, and (2) that Defendants knew of the need but deliberately disregarded it. *Johnson v. Hamilton*, 452 F.3d 967, 972-73 (8th Cir. 2006) (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). The deliberate indifference prong requires that the defendant knew of and disregarded "an excessive risk to inmate health or safety" and knew that his "conduct was inappropriate in light of that risk." *Letterman v. Does*, 789 F.3d 856, 861 (8th Cir. 2015). The plaintiff "need not necessarily show that the actor actually knew of the substantial risk of harm to an inmate; the district court can infer knowledge if the risk was obvious." *Id.* For instance, "the obvious inadequacy of a response . . . may support an inference that the officer recognized the inappropriateness of his conduct." *Krout v. Goemmer*, 583 F.3d 557 (8th Cir. 2009). "For a claim of deliberate indifference, 'the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)).

3

Defendants argue that the only evidence Washington offered "was that he believed they were deliberately indifferent," and his mere belief is not sufficient evidence. [Doc. 180, p. 3]. The Court rejects this argument because the evidence offered at trial shows otherwise. At trial, Washington presented evidence that he has filed at least eight informal resolution requests and grievance appeals related to his respiratory condition and secondhand smoke. Documents attached to those requests and appeals showed how smoke affects Washington's asthma, leading to attacks that were greater in frequency and severity. Defendants admitted at trial that they knew about Washington's asthma and smoke's effects on it. *See* Trial Tr. [Doc. 183, p. 139:19-21; p. 148:25-149:2 (Defendant Pash admitting that Washington made known his concerns about secondhand smoke through grievances)]; [Doc. 184, p. 230:9-16 (Defendant Denney admitting that he knew about Washington's smoke concerns and asthma based on his written reports)]; [Doc. 184, p. 292:8-21 (Defendant Prudden admitting she has seen documents showing Washington's respiratory conditions and smoke concerns)]; [Doc. 185, p. 384:24-385:3; 386:12-387:17 (Defendant Richey admitting that Washington complained that a cellmate was smoking in his cell and she had access to his medical lay-ins that required he have a non-smoking cellmate)]. Based on the foregoing, a jury could reasonably conclude that Defendants knew Washington suffered from an objectively serious medical need to avoid smoke.[2]

---

[2] For the first time in their Reply, Defendants additionally contend that they "did not violate Plaintiff's clearly established constitutional rights." [Doc. 192, p. 3 of 6]. Defendants assert that "[t]here is no case law that would put these Defendants on notice that the constitution required them to take steps to change the policy." [Doc. 192, p. 4 of 6]. Although Defendants never specifically identify this newly-raised argument, Defendants appear to be arguing that they are entitled to qualified immunity. However, this defense was not argued in Defendants' brief in chief. Therefore, the Court "will not consider the argument as it is well settled that we do not consider arguments raised for the first time in a reply brief." *Bearden v. Lemon*, 475 F.3d 926, 930 (8th Cir. 2007) (internal quotation marks removed).

Defendants next argue that Washington failed to present evidence that their responses to his serious medical need were unreasonable. [Doc. 180, p. 4]. However, Washington presented evidence showing that Defendants failed to make any changes to the smoking policy, its enforcement, or even tried any pilot programs that would reduce his exposure to smoke. *See, e.g.,* [Doc. 183, p. 131:16-17 (Defendant Pash testifying that she could pilot a program to prevent offenders from having cigarettes and lighters in their cells)]. Washington asked Defendants to, among other things, change the smoking policy to prohibit smoking at Crossroads altogether, move the designated smoking area away from the entrance to Crossroads' inmate medical facility, assign him nonsmoking cellmates, and permit him to wear a surgical mask to reduce his smoke exposure. Defendants admitted that they received, reviewed, and denied each of these requests and appeals. That is, despite knowing that Washington had asthma and that smoke seriously exacerbated this condition, Defendants denied each of his requests to abate the risks of harm from continued exposure to smoke.

Defendants do not dispute that they knew of Washington's serious medical need. Instead, they argue that their knowing failure to act does not amount to "disregarding" the risk smoke poses to Washington's health. Defendants appear to argue that *any* response to Washington's grievances—even a denial and refusal to make any changes—is sufficient to discharge their legal duties. *See* [Doc. 180, p. 4]. The Court disagrees. Repeatedly denying Washington's requests in no way reduces the serious risks smoke poses to him, reasonably or otherwise. In their reply, Defendants respond by contending that they changed Washington's cellmate, that they "ensured that the ventilation system did not operate the way [Washington] claimed," and that they "ensured that the designated smoking area was not within twenty-five feet of the smoking area." [Doc. 192, p. 2-3 of 6]. Here, Defendants attempt to argue that any

conflict in the evidence at trial should be resolved in their favor and shows their responses were reasonable. However, on a motion for judgment as a matter of law, Defendants must show that *no* reasonable juror could conclude based on all of the evidence presented that Defendants' responses were unreasonable and constituted deliberate indifference. Regardless of whether Defendants took *any* "extra measures" to protect Washington, [Doc. 192, p. 3 of 6], as already discussed, Washington presented evidence sufficient to permit the jury to reasonably conclude that Defendants' responses were unreasonable—that Defendants deliberately disregarded his serious medical needs.

Next, Defendants contend that Washington failed to present evidence sufficient to prove causation—specifically that, as a direct result of Defendants' deliberate indifference, Washington suffered harm. Again, this contention is not supported by the record. At trial, the jury heard Dr. Karen Epperson testify by deposition that secondhand smoke causes asthma attacks, that Washington complained about being exposed to secondhand smoke, and that Washington was treated for asthma attacks. Washington testified that his continued exposure to secondhand smoke increases the frequency and severity of his attacks. *See, e.g.*, [Doc. 183, p. 37:24-38:2; 38:19-39:5; 52:14-25)]. He described what those attacks are like for him. [Doc. 183, p. 37:19-23]. Four other Crossroads inmates who have witnessed Washington's asthma attacks in the past corroborated this testimony. *See* [Doc. 184, p. 181:3-11; 194:23-195:7; 204:17-22; 216:19-217:22]. Two of those witnesses admitted specifically that smoking in the cell with Washington present caused Washington to suffer asthma attacks. *See* [Doc. 184, p. 194:17-195:12; 204:1-22]. Although Defendants presented some evidence at trial that Washington may not even have asthma, the jury also heard evidence refuting this contention, including pages of medical records showing that Washington has been seen, diagnosed, and treated for asthma since at least 1997.

Therefore, resolving this conflict of the evidence in favor of the prevailing party, there was sufficient evidence from which the jury could reasonably conclude that Defendants' deliberate indifference to Washington's serious medical needs caused him harm.

### 2. The Punitive Damages Award

In actions brought under 42 U.S.C. § 1983, punitive damages may only be awarded when a defendant's conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Schaub v. VonWald*, 638 F.3d 905, 922 (8th Cir. 2011). "Punitive damages punish a defendant for outrageous, intentional, or malicious conduct, and deter similar extreme conduct in the future." *Id.* at 922-23. Accordingly, the Court instructed the jury at trial that if it was proved that a defendant's conduct:

> was malicious or recklessly indifferent to the plaintiff's serious medical need to be free from exposure to secondhand smoke, then you may, but are not required to, award the plaintiff an additional amount as punitive damages for the purpose of punishing the defendant for engaging in such misconduct and deterring the defendant and others from engaging in such misconduct in the future.
>
> In determining whether to award punitive damages, you should consider whether the defendant's conduct was reprehensible. In this regard, you may consider whether the harm suffered by the plaintiff was physical or economic or both; whether there was intentional malice or reckless disregard for human health or safety; whether the defendant's conduct that harmed the plaintiff also caused harm or posed a risk of harm to others; and whether there was any repetition of the wrongful conduct and past conduct of the sort that harmed the plaintiff.

[Doc. 167, p. 26-29]. The jury found that Washington was entitled to a punitive damages award from Richey, Pash, Denney, and Prudden. These defendants, however, argue that the Court should amend the jury's verdict to remove the punitive damages award because there was insufficient evidence to support a punitive damages instruction. The Court rejects this position. As discussed below, the record reflects sufficient evidence supporting a punitive damages instruction as to each of these defendants.

Defendant Richey testified to her conversations with Washington about smoking at Crossroads, during which he asked to be moved and requested a nonsmoking cellmate. She testified that she had access to his medical lay-ins, which required Washington to be given a non-smoking cellmate; knew about asthma and had previously witnessed individuals suffering asthma attacks; and was aware of Washington's asthma. [Doc. 185, p. 387:5-10; 388:10-25; 393:24-394:14]; *see also* [Doc. 184, p. 235:10-22 (Defendant Denney testifying that Richey was responsible for reviewing lay-ins and assigning cellmates to Washington)]. She admitted knowledge of Washington's complaints that his cellmate was smoking in their shared cell. [Doc. 185, p. 384:24-385:3; 386:12-387:17 (Defendant Richey admitting that Washington complained that a cellmate was smoking in his cell and she had access to his medical lay-ins that required he have a non-smoking cellmate)]. Finally, evidence showed that Richey had access to potential cellmates' smoking infractions. From this evidence, the jury could reasonably conclude that Richey could have run a search to determine whether the inmates she assigned to share Washington's cell were likely to cause him to have a life-threatening asthma attack. However, she failed to do so, which the jury could reasonably find to show reckless indifference.

Defendant Pash testified that she had been the warden at Crossroads since 2014 and deputy warden at Crossroads from 2007 to 2012. As previously discussed, she testified that she "could try to pilot something" related to changing the tobacco policy at Crossroads and that Washington had made known his concerns about secondhand smoke through grievances. [Doc. 183, p. 131:16-17; 139:19-21; 148:25-149:2]. However, she did not try to pilot any changes to the smoking policy. Evidence was also presented that Washington was supposed to have a nonsmoking cellmate, according to instructions from Medical from 1997 to at least September 12, 2015. Evidence was also presented showing that during Pash's tenure at Crossroads, several

8

of Washington's cellmates had received smoking violations *prior to* being assigned as Washington's cellmates, despite Washington's medical lay-in requiring a nonsmoking cellmate. [Doc. 183, p. 141:25-144:18]. Based on this evidence, a jury could reasonably conclude that Pash behaved with reckless indifference in denying all of Washington's requests.

Defendant Denney testified that he was warden at Crossroads from 2007 to 2014. [Doc. 184, p. 222:15-17]. He testified that he was aware of Washington's asthma and his filed grievances about secondhand smoke, as well as his lay-ins for nonsmoking cellmates. [Doc. 184, p. 234:3-21]. Defendant Denney denied Washington's appeal about secondhand smoke at Crossroads, finding Washington's allegations of smoking inside to be "meritless." [Doc. 184, p. 231:7-232:5]. Evidence was then presented that Denney was copied on a notice sent out by a housing unit supervisor, reminding staff and inmates about the nonsmoking policy indoors at Crossroads. [Doc. 184, p 232:9-233:17]. From this evidence, a reasonable jury could conclude that Denney was aware that the nonsmoking policy was repeatedly violated by both staff and inmates, and yet Denney denied Washington's appeal as "meritless." Evidence was also presented showing that during Denney's tenure at Crossroads, at least one of Washington's cellmates had received several smoking violations, including a violation just a few months *prior to* being assigned as Washington's cellmate, despite Washington's lay-in requiring a nonsmoking cellmate. [Doc. 184, p. 236:16-237:8].

Defendant Prudden testified to having seen individuals suffer asthma attacks, having seen Washington's grievance appeals, and being aware of his complaints about his respiratory conditions. [Doc. 184, p. 292:2-21]. Evidence was presented showing that Prudden had denied three of Washington's grievance appeals, including about allegations that she did not investigate but still rejected as lacking merit, *see, e.g.,* [Doc. 184, p. 307:20-308:4 (rejecting Washington's

9

grievance about staff smoking within 25 feet of Medical, despite testifying that she "d[idn']t think" "anyone actually went to Crossroads to investigate this.")]; [Doc. 184, p. 293:1-210:13 (Prudden discussing Washington's grievance appeals and her denials of them)]. For example, Prudden's grievance response stated, "[Y]ou are not being permitted by custody staff to have a face mask that was approved by medical. . . .Your complaint and pertinent information have been reviewed. I concur with the response you received at the grievance level. It was determined that a mask was not a necessity and you shall not be allowed to possess one. . . . if you need immediate assistance, you can self-declare a medical emergency for immediate medical care." [Doc. 184, p. 301:4-306:6]. Prudden went on to testify that she denied his grievance for a mask because he did not need one due to Crossroads being a nonsmoking environment, despite admitting that the nonsmoking policy inside Crossroads was violated and admitting that "there have been a lot of conduct violations." [Doc. 184, p. 304:1-305:5]. Again, a jury could reasonably conclude from this evidence that Pash behaved with reckless or callous indifference to Washington's serious medical needs.

"[I]t is improper to overturn a jury verdict unless, after giving the nonmoving party the benefit of all reasonable inferences and resolving all conflicts in the evidence in the nonmoving party's favor, there still exists *a complete absence of probative facts* to support the conclusion reached so that no reasonable juror could have found for the moving party." *Hunt v. Neb. Public Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002). As discussed above, there is evidence as to each of these defendants tending to prove that they not only acted with deliberate indifference to Washington's serious medical needs, but that they acted with reckless or callous indifference. Where, as here, "conflicting inferences reasonably can be drawn from the evidence, it is the role of the jury, not the court, to determine which inference shall be drawn." *Id.*

10

### B. Alternative Motion for a New Trial

Defendants do not provide any additional evidence or argument as to why they are entitled to a new trial. Therefore, because the Court finds that Washington presented sufficient evidence to support the jury's verdict in its entirety, Defendants' alternative motion for a new trial is denied.

### III. Conclusion

Defendants Richey, Pash, Prudden, and Denney's renewed motion for judgment as a matter of law, or in the alternative, motion for a new trial, [Doc. 180], is denied.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: June 26, 2017
Jefferson City, Missouri