# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| ECCLESIASTICAL DENZEL WASHINGTON, | ) |
|---|---|
| Plaintiff, | ) )  ) |
| v. | ) Civil No. 2:14-cv-06118-NKL |
| LARRY DENNEY, et al. | ) ) ) |
| Defendants. | ) |

# ORDER

Following entry of a jury verdict in his favor, Plaintiff Ecclesiastical Denzel Washington moves under 42 U.S.C. § 1988 for an award of attorney fees, costs, and expenses. The Court grants the motion in part and denies it in part.

## I.  Background

Plaintiff Ecclesiastical Denzel Washington brought this case against various officials at Crossroads Correctional Center, where he has been confined since 2010, for violation of his Eighth Amendment rights under 42 U.S.C. § 1983. Mr. Washington alleged that the officials were deliberately indifferent to his serious medical needs in failing to take reasonable steps to abate the risk of harm that secondhand smoke poses to him due to his history of asthma.

At trial, Mr. Washington presented evidence about his medical conditions, as well as evidence that he regularly is exposed to tobacco smoke due to Crossroads' inconsistent enforcement of its policy prohibiting smoking inside the prison, Crossroads' repeated refusal to permit Mr. Washington to use a medically prescribed mask, and Crossroads' refusal to assign him a nonsmoking cellmate. After a three-day jury trial, the jury found in favor of Mr.

Washington and against Defendants Larry Denney, Ronda Pash, Cyndi Prudden, and Cheryl Richey (collectively, "Defendants"). The jury awarded $40,000 in compensatory damages and imposed an additional $71,000 in punitive damages. The jury found against Mr. Washington only as to his claim against defendant Amy Parkhurst.

On June 26, 2017, the Court denied Defendants' motion for judgment as a matter of law or for a new trial. Doc. 195.

On September 21, 2017, upon the parties' joint motion, the Court entered an order for postjudgment injunctive relief, requiring the Missouri Department of Corrections, on or before April 1, 2018, (i) to amend its smoking policy to prohibit the sale, possession, and consumption of all tobacco products—except for authorized religious purposes—inside correctional buildings and on the grounds inside the correctional perimeter in each of the specified facilities, and (ii) to thereafter enforce that policy. Doc. 215.

As the prevailing party, Mr. Washington moves for $255,093 in attorney fees, $4,492.70 in costs, and $5,306.91 in additional expenses.[1] Mr. Washington requests attorney fees for the two primary attorneys, Michael Foster (at $320 and $350 an hour) and Phillip Zeeck (at $260 and $290 per hour),[2] as well as two other senior attorneys, three paralegals, a paralegal assistant, and a case manager in Litigation Services who assisted in the case. The breakdown of requested hours is as follows:

---

[1] Plaintiff moved in the alternative for a lesser amount in attorneys' fees if his motion for injunctive relief were to be denied. Doc. 176 at 3. Because the Court now has ordered postjudgment injunctive relief as requested by the parties, the Court will not consider the alternative request for lower fees.

[2] Both attorneys' hourly rates increased during this litigation: Mr. Foster's increased from $320 to $350, and Mr. Zeeck's increased from $260 to $290.

| | | |
|---|---|---|
| Shareholder R.S. Jones | 1.90 hours | $550/hour |
| Shareholder K.C. Volpi | 4.00 hours | $365/hour |
| Shareholder M. Foster | 285.60 hours | $350/hour |
| Associate M. Foster | 15.60 hours | $320/hour |
| Associate P. Zeeck | 339.50 hours | $290/hour |
| Associate P. Zeeck | 58.90 hours | $260/hour |
| Paralegal T. Tan | 2.00 hours | $210/hour |
| Paralegal K.K. Murray | 13.40 hours | $220/hour |
| Paralegal J.P. Thies | 91.70 hours | $215/hour |
| Paralegal Asst. R.T. Brann | 35.70 hours | $130/hour |
| Litigation Svcs. Case Mgr. S.L. Pateidl | 31.50 hours | $195/hour |
| **GRAND TOTAL** | **879.80 hours** | **$255,093.00** |

Mr. Washington also seeks reimbursement of monies paid for transportation, document reproduction, court reporter fees, meals, deposition transcripts, filing fees, and clothing that Mr. Washington wore at trial.

**II.     Discussion**

Under 42 U.S.C. § 1988, courts may award "a reasonable attorney's fee as part of the costs" to a "prevailing party" in cases brought under § 1983. 42 U.S.C. § 1988(b). However, in prisoners' rights cases, the Prison Litigation Reform Act ("PLRA") imposes limitations on the attorney fees that a prevailing plaintiff can recover. The PLRA's provisions relating to attorney fees apply to "any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988." 42 U.S.C. § 1997e(d)(1).

Defendants do not dispute that Mr. Washington is the prevailing party and therefore entitled to reasonable fees under § 1988. However, Defendants argue that the PLRA requires the Court to: (i) limit the hourly rate to 150 percent of the amount established for this time period by the Eighth Circuit Judicial Conference; (ii) reduce any fees awarded for work performed by

support staff in proportion to their market rate relative to that of attorneys; (iii) apply the statutory cap of $166,500 to the total award; (iv) apply twenty-five percent of Mr. Washington's monetary judgment to satisfy the amount of attorney fees; (v) limit any award to those fees directly and reasonably incurred in proving an actual violation; and (vi) limit the fee award based on Mr. Washington's success relative to his claims against eighteen individuals, most of whom he dismissed prior to submitting the case to the jury.

The basis for any fee award under § 1988 is the lodestar calculation, the product of the number of hours reasonably expended on the litigation and a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) ("The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates."). The PLRA has altered the lodestar calculation method in prisoner rights cases in three ways. "First, rather than hours reasonably expended in the litigation, hours used to determine the fee award are limited to those that are (1) directly and reasonably incurred in proving an actual violation of the plaintiff's rights and (2) either proportionately related to court-ordered relief or directly and reasonably incurred in enforcing such relief." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (citing 42 U.S.C. § 1997e(d)(1)). Second, the hourly rate used for the attorney fee award cannot exceed 150 percent of the hourly rate used for paying appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A. *See* 42 U.S.C. § 1997e(d)(3)). Finally, to the extent the plaintiff obtains a monetary judgment, the attorney fees award cannot exceed 150 percent of that judgment. *See*

4

§ 1997e(d)(2)).

The party seeking the award must submit documentation supporting the requested amount, making a good faith effort to exclude hours that are excessive, redundant or otherwise unnecessary. *See Hensley*, 461 U.S. at 434. Reimbursement for reasonable expenses of the kind a law firm ordinarily would bill its client may be included in an attorney fee award under § 1988. *See Williams v. ConAgra Poultry Co.*, 113 F. App'x 725, 728 (8th Cir. 2004) (noting that "travel expenses for attorneys" and other "expenses that a law firm normally would bill to its client" are "properly characterized as part of an attorney's fees award"); *Sapa Najin v. Gunter*, 857 F.2d 463, 465 (8th Cir. 1988) ("Reasonable expenses of litigation incurred by counsel on the prevailing side can be awarded as part of the fees due under Section 1988.").

### A. Applicable Hourly Rates

#### 1. Attorneys

The PLRA limits the hourly rate for attorney fees to no "greater than 150 percent of the hourly rate established under section 3006A of title 18 for payment of court-appointed counsel." § 1997e(d)(3). The rate established under § 3006A of Title 18 for the relevant time period is $129 per hour for attorneys. *See* United States Court of Appeals for the Eighth Circuit, CJA Information, available at http://www.ca8.uscourts.gov/cja-information.[3] Therefore, the maximum rate an attorney may charge under the PLRA is $129 x 1.5, or $193.50 per hour.

There are a number of factors that would have warranted using a higher rate to calculate the lodestar figure. Plaintiff's counsel's billing rates, which far exceed the $193.50 rate cap, are in line with market rates for comparable attorneys in Kansas City (*see* Doc. 176-4) and appear

---

[3] The parties agree that $129 is the applicable rate.

both reasonable and fair, given counsel's years of experience, superior preparation, and skill. The primary attorneys, Mr. Foster and Mr. Zeeck, performed admirably and obtained excellent results for their client at trial. However, the PLRA prevents the Court from calculating the attorneys' fees using a rate greater than $193.50. Accordingly, the Court will use that maximum rate for all of the attorneys in calculating the lodestar figure.

### 2. Support Staff

The PLRA is silent with respect to compensation for work performed by paralegals and similar support staff. *See Hall v. Terrell*, 648 F. Supp. 2d 1229, 1235 (D. Colo. 2009) (citing 165 A.L.R. Fed. 551 § 2(b)); *Ilick v. Miller*, 68 F. Supp. 2d 1169, 1179 (D. Nev. 1999) (noting that "the PLRA is silent with respect to fees allowed to paralegals"). As such, "courts have used their own discretion" in determining appropriate rates for such staff. *Hall*, 648 F. Supp. 2d at 1235.

Mr. Washington's legal team included three paralegals with billable hourly rates of $210, $215, and $220, a paralegal assistant with a billable hourly rate of $130, and a litigation services case manager with a billable hourly rate of $195. The publications provided by plaintiff's counsel establish that the firm's billing rates for these individuals and the attorneys who worked on this case are in line with average rates in the Kansas City market. *Compare* Doc. 176-3 at 26 *with* Doc. 176-4 at 6 (rates for the primary plaintiff's counsel average to 305/hour, while average attorney rate in Kansas City is $355/hour; rates for plaintiffs' support staff range from $130 to $220, while average support staff in Kansas City range from $70 to $298). Because these rates are reasonable, the Court will determine the appropriate PLRA rate for the support staff by drawing comparisons between the firm billing rates for the support staff on the one hand and the firm billing rates for the attorneys on the other hand. Since each of the attorneys has had his

6

billing rate artificially depressed by the PLRA's rate cap, the Court will use the lowest attorney rate, $260 per hour for attorney Zeeck, as the basis for the paralegal-to-attorney rate ratio, because that is the attorney rate closest to the PLRA's $193.50 rate. The Court then will determine a "PLRA" rate for the paralegals by reducing each paralegal's actual rate in proportion to the amount that the PLRA has reduced attorney Zeeck's rate. To illustrate:

$$\frac{x \text{ (PLRA paralegal rate)}}{\$193.50 \text{ (PLRA attorney rate)}} = \frac{\$210 \text{ (firm rate for paralegal)}}{\$260 \text{ (firm rate for attorney Zeeck)}}$$

$$x = \frac{\$193.50 \times \$210}{\$260}$$

or,

$$x = \$156.29$$

Applying the PLRA cap to the support staff billing rates in this fashion produces billing rates as follows:

| Staff | Formula | Rate |
|---|---|---|
| Paralegal Tan | 193.5 x 210/260 | $156.29 |
| Paralegal Murray | 193.5 x 220/260 | $163.73 |
| Paralegal Thies | 193.5 x 215/260 | $160.01 |
| Paralegal Assistant Brann | 193.5 x 130/260 | $96.75 |
| Litigation Services Case Manager Pateidl | 193.5 x 195/260 | $145.13 |

The Courts finds these rates reasonable under the structure imposed by the PLRA.

Awarding fees in this manner for the support staff rewards plaintiff's attorneys' "cost-effective delivery of legal services." *See Missouri v. Jenkins*, 491 U.S. 274, 288 (1989) ("By

7

encouraging the use of lower cost paralegals rather than attorneys wherever possible, permitting market-rate billing of paralegal hours 'encourages cost-effective delivery of legal services and, by reducing the spiraling costs of civil rights litigation, furthers the policies underlying civil rights statutes."); *see also Perez v. Cate*, 632 F.3d 553, 556 (9th Cir. 2011) (awarding paralegal fees "at the market rate" to extent permitted under the PLRA). Defendants, too, benefit from having the approximately 20% of the legal work performed by the support staff billed at lower rates.[4] At the same time, reducing the paralegal's rates in light of the PLRA cap on attorney rates is in keeping with the legislative intent behind the PLRA. *See, e.g.*, *Roberson v. Brassell*, 29 F. Supp. 2d 346, 353 (S.D. Tex. 1998) (reducing paralegal rates "in line with the attorneys' reduced rates"); *Laube v. Allen*, 506 F. Supp. 2d 969, 989 (M.D. Ala. 2007). ("[T]his court reads the PLRA to prohibit paralegal rates in excess of [the cap] but to permit whatever lesser rate would be considered reasonable under 42 U.S.C. § 1988(b)."); *Ilick v. Miller*, 68 F. Supp. 2d 1169, 1179–80 (D. Nev. 1999) ("Leaving the rates charged for paralegal and law clerk work at the pre-PLRA levels while reducing attorneys rates to $112.50 per hour as dictated by the PLRA is, to say the least, disproportionate. . . . Given the clear congressional intent behind the enactment of the fee caps in the PLRA, the court has little choice but to reduce the fees allowed for law clerks and paralegals to some degree.").

### B. Number of Hours "Directly & Reasonably Incurred"

The PLRA requires the Court to order reimbursement of only those attorneys' fees that were "directly and reasonably incurred in proving an actual violation" of Mr. Washington's rights. 42 U.S.C. § 1997e(d)(1). Defendants argue that the Court accordingly should reduce Mr.

---

[4] Of the 879.8 hours for which Plaintiff seeks compensation, 174.30 hours were billed by support staff.

Washington's attorney fees because (1) plaintiff spent time unnecessarily developing claims against defendants who later were dismissed from the case; (2) plaintiff's legal team was overstaffed; and (3) plaintiff drafted a proposed second amended complaint that was never filed.

At the outset of this litigation, Mr. Washington sued approximately seventeen individuals. Prior to trial, he notified defense counsel that he would dismiss six of those defendants. At the end of the second day of trial, Mr. Washington dismissed another six defendants. At trial, Mr. Washington succeeded on his claims against four of the five remaining defendants.

The Court rejects Defendants' argument that fees for work allegedly performed in pursuing defendants who ultimately were dismissed from the case should not be shifted. Defendants do not identify a single entry in plaintiff's counsel's invoice that reflects time spent investigating any of the dismissed defendants. In contrast, plaintiff's counsel represent that they did not expend resources developing claims exclusively against those defendants.[5] Plaintiff conducted no discovery, including depositions, as to those individuals and, after preliminarily reviewing relevant documents, counsel repeatedly urged Mr. Washington to dismiss those individuals prior to trial. The Court therefore will not deduct any billed time on this ground.

Defendants also argue that Mr. Washington's counsel "overstaffed" the case and assert that "it is not clear that all of the meetings, emails, and phone calls between Mr. Washington's attorneys were necessary." Doc. 182 at 6. However, the only specific entries with respect to which Defendants complain relate to the first three depositions in this case. Defendants argue that it was inappropriate for both of the primary attorneys, Foster and Zeeck, to bill time for

---

[5] Several billing entries reflect work related to former defendant Shawn Pettigrew (*see* Doc. 176-3), but those fees were directly and reasonably incurred in proving Mr. Washington's case because Mr. Pettigrew remained a key witness for Mr. Washington who was called at trial.

9

preparing for and attending these depositions.

The Court is not persuaded that the use of two attorneys at three key depositions—for defendants Denney and Pash and key witness Shawn Pettigrew—was unnecessary. Indeed, the Eighth Circuit has expressly rejected the argument "that a court may reduce attorneys' fees solely on the basis that multiple attorneys helped to secure a prevailing party's success." *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995) (finding district court erred in limiting attorneys' fees to only one of plaintiff's three attorneys on the plaintiff's successful jury claim under § 1983).

The Court has not identified any billing entries in the invoice submitted by plaintiff's counsel that appear clearly excessive, redundant, or otherwise unnecessary. To the contrary, Mr. Washington's attorneys appear to have been judicious in using firm resources to develop their case. The two associates leading Mr. Washington's legal team consulted only sparingly with more experienced (and more expensive) attorneys in their firm, as evidenced by the fact that the more senior attorneys billed fewer than six hours in total, with the more expensive attorney billing less than two hours. The associates also delegated approximately 1/5th of the team's work to less-expensive support staff. The Court thus finds no reason to deduct hours from the plaintiff's invoice for "overstaffing."

Defendants also argue that time should be deducted from the plaintiff's invoice because plaintiff's counsel spent hours drafting a second amended complaint that was never filed. Mr. Washington's attorneys explain that they drafted the second amended complaint because Mr. Washington's *pro se* complaint was difficult to interpret and full of spelling and grammatical errors, and they thought that a revised complaint would clarify the facts and issues in dispute.

Ultimately, however, in light of the risk that amending the complaint would necessitate additional dismissal and summary judgment motions, they decided not to file the complaint in order to promote judicial economy.

Notwithstanding counsel's explanations, the Court cannot conclude that the hours expended to draft the unfiled second amended complaint were "directly" incurred in proving an actual violation of Mr. Washington's rights, as the PLRA requires. *See Kemp v. Webster*, No. 09-295, 2013 WL 6068344, at *4 (D. Colo. Nov. 18, 2013) (reducing compensable hours by the 18 hours spent on a motion for a temporary restraining order that plaintiff never filed). Accordingly, Mr. Zeeck's compensable time is reduced by 48.8 hours, from 398.4 to 349.6.[6]

Finally, Defendants seek a reduction in the compensable hours to account for "block billing," entries describing multiple tasks that do not specify how much time is attributable to each task. However, block-billing is problematic only where the hours billed for multiple tasks appears excessive, or where billed time needs to be eliminated for certain tasks, such as for unsuccessful claims. *See Captiva Lake Investments, LLC v. Fid. Nat'l Title Ins. Co.*, No. 10-1890, 2016 WL 889174, at *3 (E.D. Mo. Mar. 7, 2016) ("While these entries do not indicate how many minutes were spent on each particular task, they are sufficiently specific to communicate the work that was done and its connection to the case. Furthermore, there is no evidence that attorneys were spending an excessive amount of time on their tasks or duplicating the work done by others."). Defendants have not identified—and the Court has not observed—any block

---

[6] Defendants neglected to identify the entries showing work relating to the unfiled second amended complaint. Having reviewed the invoice, the Court concludes that the following time was spent on the second amended complaint and will be excluded from the fee award: 1.4 hours on 2/21/17; 2.90 hours on 2/23/17; 1.70 hours on 2/28/17; 3.60 hours on 3/1/17; 6.30 hours on 3/2/17; 6.60 hours on 3/3/17; 5.80 hours on 3/6/17; 4.30 hours on 3/7/17; 7.40 hours on 3/8/17; 6.40 hours on 3/9/17; and 2.40 hours on 3/10/17. *See* Doc. 176-3.

entries in which the total time an individual spent on multiple tasks appeared unreasonable. And in excluding billing entries referencing the unfiled second amended complaint, including some block entries that also described tasks apparently unrelated to the second amended complaint, the Court already has resolved to Defendants' advantage pertinent ambiguities in the block billing. It therefore would not be appropriate to reduce the attorney-fee award here for block billing. *See id.* ("[T]he billing report sufficiently details the actions taken by the attorneys to allow for meaningful review of the hours expended, so a percentage reduction for block billing is unwarranted here."); *Nassar v. Jackson*, 779 F.3d 547, 554 (8th Cir. 2015) (finding that district court did not abuse its discretion in declining to reduce fee award on the basis of block-billing).

On the whole, the amount of time that plaintiff's legal team spent on this case was highly reasonable given that the case proceeded to a jury trial and also required multiple post-trial determinations, including a motion for judgment as a matter of law filed by the defendants. Therefore, with the exception of 48.8 hours spent on the unfiled second amended complaint, the Court will not reduce plaintiff's counsel's billable hours.

### C. Lodestar Calculation

Having determined the maximum rate under the PLRA and the number of compensable hours, the Court may now perform the lodestar calculation.

| **Biller** | **Hours** | **Rate** | **Fees** |
|---|---|---|---|
| Shareholder R.S. Jones | 1.9 hours | $193.50/hour | $367.65 |
| Shareholder K.C. Volpi | 4.0 hours | $193.50/hour | $774 |
| Shareholder M. Foster | 285.6 hours | $193.50/hour | $55,263.60 |
| Associate M. Foster | 15.6 hours | $193.50/hour | $3,018.60 |
| Associate P. Zeeck | 349.6 hours | $193.50/hour | $67,647.60 |
| **Total for Attorneys** | **656.7 hours** | **$193.50/hour** | **$127,071.45** |
| | | | |
| Paralegal T. Tan | 2.0 hours | $156.29 | $312.58 |

| | | | |
|---|---|---|---|
| Paralegal K.K. Murray | 13.4 hours | $163.73 | $2,193.98 |
| Paralegal J.P. Thies | 91.7 hours | $160.01 | $14,672.92 |
| Litigation Ser S.L. Pateidl | 31.5 hours | $145.13 | $4,571.60 |
| Paralegal Asst R.T. Brann | 35.7 hours | $96.75 | $3,453.98 |
| **Total for Support Staff** | **174.3 hours** | | **$25,205.06** |
| | | | |
| **Total Fees for Legal Team** | | | **$ 152,276.51**[7] |

### D. Expenses to Be Included in Fee Award

Counsel to a prevailing party in a § 1983 action is entitled to an award reimbursing reasonable expenses of the kind normally charged to clients by attorneys. *See Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996) (citing *Northcross v. Board of Educ.*, 611 F.2d 624, 639 (6th Cir. 1979) (reasonable out-of-pocket expenses incurred by attorney that normally are charged to fee-paying client could be included in 42 U.S.C. § 1988 "attorney's fee" award)).

Mr. Washington's counsel seeks a total of $5,306.91 in various expenses not listed in his proposed bill of costs. Doc. 176-3, at 27. Mr. Washington submitted a detailed itemization of

---

[7] Plaintiff's counsel's performance in this case was superior, and if the PLRA permitted adjustment of the lodestar calculation on the basis of factors not subsumed within the figure, the Court would have enhanced the value of the attorneys' fees by 25%. The Court was impressed by plaintiff's counsel's professionalism and dedication, particularly in light of the unique difficulties this case presented. Plaintiff's counsel communicated with Mr. Washington on a regular basis, despite major obstacles, including his severe hearing impairment, which required the use of a special machine for communicating by telephone. Counsel spent many hours traveling to and from Mr. Washington's distant prison in order to communicate with their client more effectively. Counsel also arranged for special technology at trial to permit their client to hear testimony and to be heard by the jury despite his disabilities. Moreover, Mr. Foster and Mr. Zeeck were unusually skilled and well-prepared at every stage of the litigation. Counsel's "commitment of resources [wa]s rare and exceptional, as compared to the run-of-the-mill representation in such cases." *Kelly v. Wengler*, 822 F.3d 1085, 1102 (9th Cir. 2016) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010) (quotation marks omitted)). After having been asked by the Court to represent Mr. Washington, counsel advocated tirelessly for an immensely important issue affecting the health of inmates and staff in prisons throughout the state. Even with a 25% enhancement, the attorneys' fee of $190,345.39 would have been well below the market value of the work performed by plaintiff's legal team, for which they would have charged a paying client $255,093.00. But the Court concludes that the PLRA does not permit enhancement of the lodestar figure. *Cf. Kelly*, 822 F.3d at 1102.

these expenses, which include the cost of clothes for Mr. Washington to wear during trial, travel and meal expenses, and court reporter and delivery fees. *See id.* Defendants object to only the $300.00 request for expert fees and the $95.10 request for clothes purchased for Mr. Washington to wear at trial. Because Mr. Washington withdrew his initial request for expert fees, the Court deducts this $300.00 amount from the requested expenses. As for the clothes that Mr. Washington wore at trial, case law supports Defendants' position that this cost is not the type of out-of-pocket expense that Mr. Washington's firm ordinarily would bill its client. *See Fields v. Corizon Health Inc.*, No. 09–529, 2012 WL 162121, at *5 (M.D. Fl. Jan. 19, 2012) (finding that "$200.00 for 'suits for court' is not a reimbursable cost" under § 1988); *Blissett v. Casey*, 969 F. Supp. 118, *aff'd* 147 F.3d 218 (2d Cir. 1997) (finding that cost of plaintiff's clothes was "not a reasonable out-of-pocket expense incurred by the attorney and which is normally charged fee paying clients") (quotation marks and citation omitted).

The Court finds that the remaining itemized expenses, totaling $4,911.81, are reasonable and of the type that an attorney normally would charge to a fee-paying client, and therefore recoverable as part of the fee award under § 1988.

### E. Section 1997e(d)(2) Requirements

Defendants argue that, under Section 1997e(d)(2) of the PLRA, some portion of the judgment in favor of the plaintiff, up to 25 percent, must be applied to the plaintiff's attorneys' fees.[8] Section 1997e(d)(2) states that "*whenever* a monetary judgment is awarded," some amount of that award, up to 25 percent, is to be paid by the plaintiff rather than the defendants.

---

[8] Because the total attorneys' fee award, even with appropriate expenses included, is less than $166,500 (1.5 times the $111,000 monetary judgment awarded to Mr. Washington), the Court need not consider whether the cap on the total attorney fee in PLRA Section 1997e(d)(2) applies in this case that involves both monetary and nonmonetary relief.

Plaintiff does not cite, and the Court is not aware of, any cases indicating that this provision does not apply if non-monetary relief is awarded. Therefore, in view of the provision's plain language, the Court must apply some portion of the judgment to the fee award. The question is how much of the award should be paid by the plaintiff.

Section 1997e(d)(2) "does not require the district court to automatically apply 25 percent of the judgment to pay attorney's fees." *Boesing v. Speiss*, 540 F.3d 886, 892 (8th Cir. 2008). Rather, the Court has broad discretion in determining what percentage should apply. *See Kahle v. Leonard*, 563 F.3d 736, 743 (8th Cir. 2009) ("A district court has discretion to apply between zero and 25 percent of the damages award towards attorneys' fees."). In fact, the Eighth Circuit approved a contribution of just one percent in a case where the successful plaintiff received a jury award of $25,000. *See Boesing*, 540 F.3d at 892.

When determining an appropriate percentage, a district court should consider, *inter alia*:

(1) the degree of the opposing parties' culpability or bad faith, (2) the ability of the opposing parties to satisfy an award of attorneys' fees, (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances, and (4) the relative merits of the parties' positions.

*Kahle*, 563 F.3d at 743.

Plaintiff contends that the Court should order the deduction of no more than 10 percent of his money judgment because the jury determined that Defendants' conduct was sufficiently reprehensible to award punitive damages, and imposing fees on the defendants will deter other prison officials in Missouri from failing to abate the risk of harm that secondhand smoke poses to inmates with severe asthma. Defendants, on the other hand, assert that Mr. Washington should pay the maximum 25 percent of his fee award in light of his belated dismissal of twelve defendants on the brink of trial.

15

In view of the jury's finding that the defendants' conduct was sufficiently reprehensible to support an award of punitive damages, the likelihood that a higher fee award will deter similar conduct in the future, and the fact that Mr. Washington voluntarily dismissed 12 defendants before submitting his claims to the jury, the Court finds that Mr. Washington should pay ten percent of his damages award ($11,100) towards his counsel's legal fees.

### F. Reasonable Costs

Mr. Washington requests reimbursement of $4,492.70 in costs listed in a proposed bill of costs as follows:

| Fees of the Clerk | $350.00 |
|---|---|
| Fees for printed or electronically recorded transcripts necessarily obtained for use in the case | $3,155.00 |
| Fees and disbursements for printing | $967.70 |
| Docket fees under 28 U.S.C. § 1923 | $20.00 |

Doc. 177. Because Mr. Washington initially did not provide supporting documentation, Defendants objected to two items: (1) $967.70 for printing and (2) $3,155.00 for printed or electronically recorded transcripts. After the Court's July 5, 2017 show cause order, however, plaintiff's counsel submitted documentation supporting these requests. *See* Doc. 200. The submitted invoices substantiate the fees for printing (Doc. 204-2) and printed and electronically recorded transcript fees (Doc. 204-1). Accordingly, the Court finds that all of the costs itemized in the bill of costs form, totaling $4,492.70, should be taxed to the defendants.

### G. Section 1997e(d)(1) Requirements

The Court finds that the fees, expenses, and costs to be assessed against the Defendants were (1) directly and reasonably incurred in proving an actual violation of Mr. Washington's

16

rights (*see* 42 U.S.C. § 1997e(d)(1)(A)); and (2) sufficiently proportional to the monetary and injunctive relief Mr. Washington obtained (*see* 42 U.S.C. § 1997e(d)(1)(B)(i)).

**III.    Conclusion**

For the foregoing reasons, plaintiff Washington's motion for an award of attorney fees, costs, and expenses, Doc. 176, is granted in part and denied in part. The Court awards to plaintiff's counsel a total of $161,681.02, comprised of $152,276.51 in fees, $4,911.81 in attorney expenses, and $4,492.70 in taxable costs. Mr. Washington must pay $11,100 (representing ten percent of his monetary damages) of this award.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated:  October 3, 2017  
Jefferson City, Missouri