# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | |
|---|---|
| ECCLESIASTICAL DENZEL WASHINGTON | |
| Plaintiff, | |
| v. | No. 2:14-cv-06118-NKL |
| LARRY DENNEY, et al. | |
| Defendants. | |

## ORDER

*Pro-se* non-party David Barnett seeks to intervene in this action for the purpose of moving to terminate the Court's judgment related to the Stipulated Order on Plaintiff's Motion for Postjudgment Injunctive Relief. For the reasons explained below, Mr. Barnett's motions are denied.

## I. Background

On September 21, 2017, upon the parties' joint motion, the Court entered a stipulated order for postjudgment injunctive relief, requiring the Missouri Department of Corrections ("DOC"), on or before April 1, 2018, (i) to amend its smoking policy to prohibit the sale, possession, and consumption of all tobacco products—except for authorized religious purposes—inside correctional buildings and on the grounds inside the correctional perimeter in each of the specified facilities, and (ii) to thereafter enforce that policy. Doc. 215. Mr. Barnett, apparently a tobacco-user, seeks leave to intervene in order to undo the injunctive relief that the Court ordered.

## II. __Discussion__

### a. __Motion to Intervene__

As discussed below, Mr. Barnett's motion to intervene is untimely, and even if it were timely, it would still fail on the merits because of his lack of a cognizable interest.

### 1. __Timeliness__

"The issue of the timeliness of a motion to intervene is a threshold issue." *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010). In determining whether a motion to intervene is timely, the Court must consider: "(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." *Planned Parenthood of the Heartland v. Heineman*, 664 F.3d 716, 718 (8th Cir. 2011).

"The general rule is that motions for intervention made after entry of final judgment will be granted only upon a strong showing of entitlement and of justification for failure to request intervention sooner." *Id.* (quotation marks and citation omitted). Mr. Barnett filed his motion to intervene in May 2018, more than seven months after the Court entered the order granting the injunctive relief resulting in the judgment. *Compare* Docs. 215 (filed September 21, 2017) *and* 218 (filed October 3, 2017) *with* Docs. 225 *and* 226 (both purportedly mailed on May 11, 2018, postmarked May 16, 2018, and filed May 17, 2018). The entry of judgment followed arms-length negotiation between the parties, with mediation by a Magistrate Judge, that resulted in a settlement satisfactory to all parties and the Court.

### a. **Reason for the Delay**

In his reply, Mr. Barnett explains his delay in moving to intervene as follows. He first heard rumors of the tobacco ban in September 2017 (presumably just after the Court entered the order at issue). He asked the offender law clerks to search for case law concerning the rumored tobacco ban, but "a search of Lexus [*sic*] revealed no results."

The MDOC formally notified offenders at least as early as November 2017 that the tobacco ban would become effective April 1, 2018.[1] The November 29, 2017 memorandum that Mr. Barnett cites does not specify that the DOC facilities' "transition to tobacco-free" was the product of a court-ordered stipulation. Doc. 235, at 18 of 19. Mr. Barnett states that he therefore "was left to conclude that the decision was an exercise of the discretion of MDOC officials, not the result of this court's order." Doc 235, at 8.

Mr. Barnett apparently did not attempt to conduct diligence with respect to the ban until mid-February, when rumors circulated that Plaintiff was involved in bringing about the tobacco ban. Mr. Barnett writes, "[t]he movant was initially inclined to disregard such rumors as this was not the first time the plaintiff had been accused of attempting to remove tobacco from the MDOC . . . ; but the mere fact that tobacco was being removed was a sufficient motivator for the movant to start researching again." *Id.* Mr. Barnett's research concluded when he found *Washington v. Blunt*, No. 08-4092-NKL, 2011 U.S. Dist. LEXIS 75731, at *6 (W.D. Mo. July 12, 2011), in which the Court enforced a settlement agreement that Mr. Washington had signed in a

---

[1] The body of the memorandum begins, "As you were previously notified, the Department facilities will transition to tobacco-free effective April 1, 2018." Doc. 235, at 18 of 19 (DOC Memorandum dated November 29, 2017, Subject: Tobacco Stepdown Plan). This indicates that the inmates were notified of the anticipated tobacco ban sometime before November 29, 2017.

case concerning environmental tobacco smoke in prison. Although that case predated the injunctive order entered in this case by more than six years, Mr. Barnett claims to have assumed that the rumors circulating in February 2018 "were misinformation based upon other individuals having found *Blunt* as well." Doc. 235, at 8.

Six weeks later, Mr. Barnett overheard an exchange "between two staff members referencing the plaintiff's protective custody status and its relation to the tobacco ban" and this, he claims, was the "first real indication that the plaintiff had in fact brought litigation that resulted in the tobacco ban." *Id.*, at 9. Mr. Barnett then "began inquiring of staff, searching for clarifying details. He also reached out to a family friend, asking her for help researching Mr. Washington and his involvement." *Id.* That friend then reported back after reviewing online news sources. Thus, Mr. Barnett claims, he did not know that this case was "the cause of the tobacco ban" until early April.

In short, Mr. Barnett knew of the tobacco ban at least as early as November 29, 2017, but he did not conduct serious diligence regarding the source of the ban until April 2018, when "the offender canteen stopped providing tobacco and other supplies began to dwindle . . . ." Doc. 235, at 9. Mr. Barnett states that he does not have any newspaper subscriptions or direct access to PACER, and he had no prior experience with civil litigation or *pro se* litigation generally. However, at least as early as September 22, 2017, a simple internet search for the terms "Missouri" and "tobacco" and "ban" would have revealed that the change in the DOC tobacco policy was related to a settlement in a court proceeding involving Mr. Washington. *See, e.g.,* Mike Hendricks, *Missouri Prisons to Go Smoke Free After Double-Murderer Wins in Court*, THE KANSAS CITY STAR (September 22, 2017, 5:24 PM) ("Now, after a decade-long legal battle, Washington is

declaring victory with a settlement that not only protects his health but orders the Missouri prison system to go smoke-free on or before April 1."); Chris Kenning, *Missouri Murderer Faces Threats After Winning State Prison Smoking Ban* (September 25, 2017, 4:12 PM), https://www.reuters.com/article/us-missouri-prisons-smoking/missouri-murderer-faces-threats-after-winning-state-prison-smoking-ban-idUSKCN1C02WS ("After the court last week prohibited the sale, use and possession of tobacco after April 1, 2018, under a settlement agreement, the Missouri Department of Corrections on Monday said it was sending memos to alert 32,000 inmates to the change.").

Given all the circumstances, notwithstanding Mr. Barnett's apparently substantial efforts to move to intervene in April 2018, when tobacco was no longer available, his explanation for the nearly eight-month delay does not by itself warrant permitting him to intervene in this case several months after judgment was entered and months after he received notice of the change in the tobacco policy.

b. <u>**Whether Mr. Barnett Is Entitled to Intervene Despite Delay**</u>

Mr. Barnett argues that, despite the fact that judgment was entered months ago, he is entitled to intervene, as a matter of law, for three reasons. First, he argues that 18 U.S.C. Section 3626(b)(2) "entitle[s]" him to intervene, and that Section 3626(b)(1)(i) expressly contemplates intervention up to two years following entry of judgment. But the cited sections do not concern the circumstances under which an individual may be permitted to intervene. Instead, they concern the circumstances under which *one who has already intervened* may move to terminate a judgment. *Compare* 18 U.S.C. 3626(b) (permitting "intervener," not a potential or prospective intervener, and not a party seeking to intervene, to seek to terminate judgment) *with, e.g., Am. Civil Liberties*

*Union of Minnesota v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1092 (8th Cir. 2011) (explaining

what "*a party seeking to intervene* must establish" and explaining that the "*prospective

intervenor*'s knowledge of the litigation" is relevant) (emphases added); *F.T.C. v. Johnson*, 800

F.3d 448, 452 (8th Cir. 2015) (explaining that "we require *the party seeking to intervene* to make

a strong showing of inadequate representation"). An intervener is one who has been granted leave

to intervene. Section 3626's discussion of the rights of one who is an "intervener" thus is irrelevant

to the threshold question of whether Mr. Barnett should *become* an intervener.

Second, Mr. Barnett appears to suggest that the "stage-of-litigation prong" does not support

a finding of untimeliness. But, to the contrary, the Eighth Circuit has repeatedly held that

timeliness ought to be determined by reference to "the extent the litigation has progressed at the

time of the motion to intervene . . . ." *See, e.g., In re Wholesale Grocery Prod. Antitrust Litig.*,

849 F.3d 761, 767 (8th Cir. 2017).[2]

Third, Mr. Barrett argues that the passage of nearly eight months since the judgment is "not

relevant to the consideration of timeliness." But the cases he cites do not support his position. The

Sixth Circuit's statement in *U.S. v. City of Detroit* that "[t]he mere passage of time . . . is not

particularly important to the progress-in-suit factor" is not equivalent to a statement that the

passage of time is not relevant to *timeliness*. The progress-in-suit factor is merely one component

of the timeliness analysis. Furthermore, the *City of Detroit* case was "[]not expected to end any

---

[2] Mr. Barnett also cites a Ninth Circuit case for the proposition that a motion to intervene is timely
even after lengthy negotiations when the motion is "filed promptly after interveners first had notice
government may not have adequately represented their interests," but it is not clear that Mr. Barnett
moved promptly to intervene in this case. More fundamentally, in the Ninth Circuit case, when
the movant sought to intervene, the settlement had not been finalized, and no judgment had issued.
*See United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002).

time soon" when the non-party moved to intervene. Similarly, in *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994), the non-party moved to intervene within two months of the issuance of the preliminary injunction in that case, and no judgment had been entered at that time. *Id.*, 1204. The cases that Mr. Barnett cites establish that, where there is good reason for delay, untimeliness does not necessarily bar intervention where no judgment has been issued. They do not help Mr. Barnett, who moved to intervene more than seven months after entry of judgment in this case.

*    *    *

In light of the fact that the parties vigorously litigated whether injunctive relief was appropriate, then negotiated, at arms' length, and with the mediation of a Magistrate Judge, a settlement that resulted in the Court's so-ordering of the injunctive relief, and the fact that judgment was entered several months before Mr. Barnett sought to intervene, the Court finds— despite Mr. Barnett's excellent briefing—that the post-judgment motion to intervene is untimely. *See Am. Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1095 (8th Cir. 2011) (affirming denial of motion to intervene based on untimeliness); *Heineman*, 664 F.3d at 718 (8th Cir. 2011) ("NuLife failed to justify its delay in light of its prior knowledge of the case, and the parties would be prejudiced because final judgment on their settlement had already been entered."); *see also Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365, 93 S. Ct. 2591, 2603 (1973) (If [the motion to intervene] is untimely, intervention must be denied. Thus, the court where the action is pending must first be satisfied as to timeliness.").

## 2. <u>Merits of the Motion to Intervene</u>

Even if Mr. Barnett's motion were deemed timely, he does not qualify to intervene because he lacks a legally cognizable interest. To intervene, whether as of right or at the Court's discretion,

7

the movant must have a legally cognizable interest. *See, e.g., Liddell v. Special Admin. Bd. of Transitional Sch. Dist. of City of St. Louis*, No. 16-3437, 2018 WL 3301434, at *3 (8th Cir. July 5, 2018) ("[T]he intervenor must show he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'") (citation omitted); *Old Dominion Elec. Coop. v. Fed. Energy Regulatory Comm'n*, 892 F.3d 1223, 1233 (D.C. Cir. 2018) (holding that "the prospective intervenor must establish injury-in-fact to a legally protected interest," and denying motion to intervene because movant "ha[d] no legally cognizable interest").

Mr. Barnett seeks to challenge a stipulation between the plaintiff and the DOC that bans tobacco products, and which the Court so-ordered. Mr. Barnett claims that he has experienced "anxiety and distress" because of (1) the removal of tobacco—presumably because he himself uses tobacco products, and (2) increased violence due to staffing shortages, exacerbation of other inmates' mental health disorders, and an increase in opioid usage and the black-market trade of tobacco—all purportedly resulting from the tobacco prohibition.

As a preliminary matter, Mr. Barnett does not have a legally cognizable interest in using tobacco. "There is no constitutional right to smoke in prison." *Grass v. Sargent*, 903 F.2d 1206, 1206 (8th Cir. 1990) (affirming dismissal of claim that a state department of correction's prohibition of smoking in prison visitation area violated plaintiff's constitutional rights); *see also Gallagher v. City of Clayton*, 699 F.3d 1013, 1018 (8th Cir. 2012) ("The alleged right to smoke in public is not so deeply rooted in the Nation's history and tradition, and it is not implicit in the concept of ordered liberty. As such, it does not fall within the 'liberty' that is specially protected by the Due Process Clause."). The tobacco prohibition at issue here "does not deprive inmates of

a minimal civilized measure of life's necessities," and therefore does not implicate Mr. Barnett's Eighth Amendment rights. *Grass*, 903 F.2d at 1206. Mr. Barnett does not identify—and the Court is not aware of—any other basis for finding a right to use tobacco. Because he does not have a right to use tobacco in prison, Mr. Barnett does not have a legally cognizable interest. *See id.* ("We agree with the district court that the complaint has no basis in law and is nothing more than a claim of infringement of a legal interest that does not exist.").

Second, Mr. Barnett's claim that the change in the DOC's tobacco policy has increased violence in Missouri prisons is speculative and tenuous. Notwithstanding Mr. Barnett's assertion that he was threatened with violence by a fellow inmate who later blamed the threat on nicotine withdrawal, and Mr. Barnett's accounts of a riot and staff-on-staff assault that he attributes to the tobacco prohibition, the alleged injuries cannot be described as "fairly traceable" to the tobacco policy. *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 837 (8th Cir. 2009) (finding no standing to intervene where proposed intervener "ha[d] not adequately alleged that it will suffer a concrete and particularized injury" and "d[id] not even attempt to establish that its injury is fairly traceable to the challenged action and that its injury is likely to be redressed by a favorable decision"). Furthermore, DOC is in the best position to seek redress if it is, as Mr. Barnett claims, having trouble staffing its prisons or maintaining order because of the tobacco ban.

Because Mr. Barnett has no legally cognizable interest to safeguard in this case, the Court cannot permit him to intervene.

### b. Motion to Terminate Judgment

Because Mr. Barnett may not intervene, his motion to terminate the judgment also is denied.

**III. Conclusion**

For the reasons discussed above, Mr. Barnett's motions to intervene and to terminate the judgment are denied.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 16, 2018
Jefferson City, Missouri